UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

BOBBY GILBERT, )
 )
    Plaintiff, )
 )
v. ) No.: 3:17-CV-413-TAV-DCP
 )
KROGER LIMITED PARTNERSHIP I, )
 )
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on defendant's motion for summary judgment [Doc. 12]. Defendant moves for summary judgment on each of plaintiff's four claims: failure to accommodate a disability, disability discrimination, and retaliation under the Americans with Disabilities Act ("ADA"), and disability discrimination under the Tennessee Disability Act ("TDA") [Docs. 1, 12].[1] Plaintiff responded in opposition to defendant's motion [Doc. 20], and defendant replied [Doc. 22]. For the reasons discussed below, the Court will grant defendant's motion.

---

[1] Defendant's memorandum in support of its motion for summary judgment interprets plaintiff's complaint as also alleging failure-to-accommodate and retaliation claims under the TDA [Doc. 13 p. 7]. However, Count IV of plaintiff's complaint—the only one to mention the TDA— only alleges that "Defendant discriminated against Plaintiff on the basis of his disability" [Doc. 1 p. 8]. Thus, the Court reads the complaint as alleging only a disability discrimination claim under the TDA. However, as the Court will explain below, to the extent the complaint does allege failure-to-accommodate and retaliation under the TDA, the Court will also grant defendant's motion as to these claims.

## I. Background

Many facts in this case are undisputed. Plaintiff Bobby Gilbert began working as a clerk for defendant Kroger in 1968, when he was nineteen years old.[2] In 2015, plaintiff was working as the grocery department manager at Kroger Store #549 in Knoxville, Tennessee, a position he had held for over a decade. The duties assigned to the grocery manager position included supervising employees, overseeing and ensuring neat store conditions, stocking, and scheduling. This last duty is particularly important in this case.

Also in 2015, plaintiff was diagnosed with Parkinson's disease, which caused him to develop mild tremors in his right arm. Although he continued in most of his duties without incident, these tremors made using a computer mouse, typing on a keyboard, and text messaging on a cell phone difficult. This, in turn, left plaintiff unable to enter employee schedules into the computer as he had been trained. The tremors also made responding to text messages and emails from co-workers difficult. Prior to July, 2016, plaintiff compensated for the scheduling difficulty by handwriting the schedule, which an assistant would then enter into the computer. Despite this arrangement, the schedules were entered in a timely manner without issue [Doc. 21-2 p. 15].

Mary Keeler became the new store manager for Kroger Store #549 in May, 2016. In early July, 2016, plaintiff met with Ms. Keeler to discuss the grocery department. At

---

[2] Unless otherwise noted, the information in this section is drawn from plaintiff's response to defendant's statement of material facts [Doc. 21]. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that all facts and the inferences to be drawn from them must be viewed in the light most favorable to the nonmoving party).

some point in the conversation, Ms. Keeler asked plaintiff why he was not entering the employee schedules into the computer himself. Plaintiff explained that he had difficulty controlling a computer mouse and keyboard due to his Parkinson's and resulting tremors. From this point on, the parties' versions of events at this meeting differ.

Ms. Keeler—and by extension, defendant—states that she asked plaintiff if he thought another type of computer keyboard or mouse would help, a question that plaintiff allegedly did not answer [Doc. 14-1 p. 2]. Ms. Keeler then states that plaintiff "sat back in his chair" and opined that it might be time that he step down from his grocery manager position [*Id.*]. Plaintiff also apparently mentioned a new Kroger store that had opened in Powell, Tennessee, and wondered if that store might have other positions available [*Id.*]. At this, Ms. Keeler states that she told plaintiff to take time to think about it and get back to her [*Id.*].

Plaintiff's story differs. Plaintiff has stated that he does not recall Ms. Keeler asking if another type of mouse or keyboard would help him [Doc. 21-1 p. 12]. He does, however, assert that Ms. Keeler suggested he use his left hand instead. When plaintiff replied that he could not, plaintiff states that Ms. Keeler informed him that the company expected its grocery managers to enter schedules into the computer and recommended that plaintiff step down to a less strenuous position.

After this meeting, plaintiff submitted a letter requesting a "step down" and transfer to Kroger Store #670 [Doc. 14-1]. Plaintiff also contacted his union representatives, one of whom, named Chris Branum, reached out the District Human Resources Coordinator

for the Kroger Nashville Division, Gaynelle Herron [Doc. 14-2]. Mr. Branum indicated that he thought Mr. Gilbert had been treated badly and requested a meeting, which was ultimately held on July 21, 2016. In that meeting, Ms. Herron asked plaintiff questions regarding his request to transfer, including whether Ms. Keeler had raised her voice or asked him to step down in their meeting [Doc. 14-2 p. 2]. Ms. Herron maintains that plaintiff responded "no" to both of these questions, although plaintiff has stated that he did not respond "no" when asked if Ms. Keeler asked him to step down [Doc. 21-1 p. 42]. Plaintiff did explain to Ms. Herron that he requested to step down because he felt pressured to do so by Ms. Keeler [Doc. 14-2 p. 2]. Ms. Herron apologized that Mr. Gilbert felt pressured, told him that Kroger would retract his letter requesting a step down and transfer, and offered to let him keep his position as grocery manager at Store #549 [*Id.*].

Despite this offer, plaintiff asked if he could still transfer to Store #670, which had an open lead dairy clerk position, as he had previously enjoyed working with the manager of that store [*Id.*]. Mr. Gilbert understood that the dairy lead position would require a decrease in his pay rate [Doc. 21-1 p. 15]. Nevertheless, Mr. Gilbert submitted another letter requesting a transfer to Store #670, which became effective on August 7, 2016 [Docs. 14-2 pp. 3, 64]. After this transfer, plaintiff received several written notices of problems with his performance, which he attributes to "understaffing and unrealistic expectations." Defendant, however, states that plaintiff was not meeting the expectations of his position [*see* Doc. 14-3].

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 21, 2017, alleging discrimination based on his age and disability [Doc. 21-4]. Defendant responded to that charge on April 18 [Doc. 23-1]. That summer, plaintiff was granted an extended medical leave to undergo knee replacement surgery [Doc. 14-3 p. 3]. During that time, plaintiff filed the complaint in this case, alleging that defendant violated his rights under the ADA by failing to accommodate his disability and retaliating against him for requesting a reasonable accommodation, and under both the ADA and TDA for discriminating against him based on his disability [Doc. 1]. Plaintiff returned from medical leave on January 13, 2018, and retired from Kroger at the end of that day [*Id.* p. 4].

## II.  Legal Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and the inferences to be drawn from them must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis ex rel. Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotation marks omitted). That is, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue of fact must be material, in that it might affect the outcome of the suit under governing law. *Id.*

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III. Analysis**

Defendant moves for summary judgment on all of plaintiff's claims. First, defendant argues that plaintiff's failure-to-accommodate claim under the ADA must fail because plaintiff was not a "qualified" individual under the Act, and if he was, defendant accommodated plaintiff's request to step down and transfer to another position and store. Next, defendant again argues that plaintiff is not qualified and that he suffered no adverse employment action that would support a discrimination claim under the ADA. As for plaintiff's retaliation claim under the ADA, defendant argues that plaintiff failed to exhaust his administrative remedies and that, even if he did, plaintiff fails to establish that he suffered any adverse action that can be causally linked to his disability. Finally, defendant argues that any claim of discrimination under the TDA arising from plaintiff stepping down from his grocery manager position is barred by the one-year limitations period. The Court will address each of these arguments in turn.

**A. Failure to Accommodate Under the ADA**

The ADA imposes upon employers the duty to make reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). In order to establish a *prima facie* case for failure to accommodate, a plaintiff must show that: "(1) [he] is disabled within the meaning of the Act; (2) [he] is otherwise qualified for the position, with or without reasonable accommodation; (3) [his] employer knew or had reason to know about [his] disability; (4) [he] requested an accommodation; and (5) the employer failed to provide the necessary

7

accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011). Once a plaintiff establishes a *prima facie* case for a reasonable accommodation claim, the burden shifts to the employer to demonstrate that an accommodation would impose an undue hardship. *Id.* at 983.

Defendant does not dispute that plaintiff fulfills the first, third, and fourth prongs of the *prima facie* case; however, for purposes of the final prong, the parties disagree about *what* accommodation plaintiff requested. Plaintiff argues that "[t]he reasonable accommodation Plaintiff sought was the ability to continue utilizing the reasonable accommodation he was already receiving," that is, the informal arrangement in which plaintiff would handwrite the schedules and have assistant managers input them into the computer [Doc. 21 p. 15]. However, there is no evidence in the record to suggest that plaintiff actually requested this accommodation, and plaintiff provides none now.

Plaintiff argues that this case is analogous to *Camp v. Bi-Lo*, 662 F. App'x 357 (6th Cir. 2016), but that case is distinguishable. There, the plaintiff had actually "requested an accommodation that would allow returning to work under the same arrangement as before where his two coworkers lifted the heaviest items." *Id.* at 360. Here, in contrast, there is no evidence in the record to suggest that plaintiff asked Ms. Keeler—or, later, Ms. Herron—if he could continue in his grocery manager position under the same arrangement he had been using. In fact, there is no evidence in the record to suggest plaintiff *ever* requested an accommodation regarding his inability to use a computer mouse or keyboard prior to his meeting with Ms. Keeler. *Compare Parsons v. Auto Club Group*, 565 F. App'x

8

446, 449 (6th Cir. 2014) (finding employee failed to request an accommodation where he merely complained to his supervisor about his sleep apnea and about the difficulties associated with paying for the medical device to treat it), *with Cady v. Remington Arms Company*, 665 F. App'x 413, 418–19 (6th Cir. 2016) (holding that a reasonable jury could find that the plaintiff requested an accommodation from his employer, where he informed his employer about his back problems, explained the limitations arising from those problems, and told his employer that he would need to "mix up" his work tasks as a result). Instead, the record demonstrates that he informed his previous manager that he could not enter schedules into the computer due to his tremor, and that the manager told him not to worry about it [Doc. 21-1 pp. 7, 8]. Thereafter, plaintiff states that he developed an informal arrangement wherein his assistant managers would enter the schedules for him, and although he did not speak to his supervisor directly about the arrangement, plaintiff believes the supervisor "accepted and assumed that [plaintiff] would take care of it." [*Id.* p. 8].

The only actual request for an accommodation by the plaintiff that is supported by the record is plaintiff's request for a step down and transfer to Kroger Store #670 [Doc. 14-1]. Even after that first request, Ms. Herron gave plaintiff the opportunity to remain in his manager position at Store #549, but plaintiff declined and again requested a transfer to Store #670 [Docs. 14-2 pp. 2–3, 64; 21-1 p. 16]. Defendant granted that request, and plaintiff transferred to the lead dairy clerk position at Store #670 in August, 2016 [Doc. 21-1 p. 20]. Therefore, regardless of whether plaintiff was "qualified" for the grocery

9

manager position under the second prong of the *prima facie* case, the undisputed evidence in the record demonstrates that defendant did not fail to provide plaintiff with his requested accommodation. Therefore, the Court will grant summary judgment in defendant's favor on plaintiff's failure-to-accommodate claim.

### B. Disability Discrimination Under the ADA

For plaintiff to make out a *prima facie* case of employment discrimination based on his disability with indirect evidence, plaintiff must show that: (1) he is disabled; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) defendant knew or had reason to know of his disability; and (5) he was replaced, the job remained open, or similarly situated non-protected employees were treated more favorably. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999). Defendant disputes the second and fifth prongs.

Plaintiff's claim of discrimination appears to be based solely on a theory of "constructive demotion" [*see* Doc. 21 pp. 17–20]. This case is somewhat unusual, however, because although the parties agree that plaintiff's transfer to the lead dairy clerk position was, in fact, a "step down" from his grocery manager position, plaintiff actually requested the transfer. In such cases, the Sixth Circuit has held that a "requested transfer may still give rise to an adverse employment action" in certain circumstances—namely, where the context of the request or the conditions of the transferred-to position call the voluntariness of the request into question. *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 920 (6th Cir. 2014).

In *Deleon*, the district court had granted summary judgment for the defendant employer based, in part, on the fact that the plaintiff had applied for the position to which he was eventually transferred. *Id.* at 916, 921. The Sixth Circuit reversed, characterizing the plaintiff's transfer as "involuntary" because he was only transferred to the position after his initial application was denied. *Id*. at 916 n.1. The court was also concerned about the "objectively intolerable" and hazardous conditions plaintiff endured in the new position, for which the plaintiff had requested hazard pay that was never provided. *Id*. at 920. This, the court said, "tilt[ed] the issue as to whether Deleon really requested or wanted the position in his favor." *Id.* Nevertheless, the court emphasized that "the key focus of the inquiry should not be whether the lateral transfer was requested or not requested . . . but whether the 'conditions of the transfer' would have been 'objectively intolerable to a reasonable person.'" *Id.* at 921.

In this case, viewing the facts in the light most favorable to plaintiff, plaintiff's work conditions—either before or after his request to transfer—do not rise to the level of "objective intolerability" that might call the voluntariness of plaintiff's request into question. Plaintiff alleges that he initially felt pressured into requesting a transfer to Kroger Store #670 after Ms. Keeler suggested that he step down to a position that did not require entering schedules into the computer [Doc. 21-1 p. 11]. Aside from this incident, plaintiff encountered no other issues with Ms. Keeler or any other managers at Store #549 and otherwise enjoyed his position as grocery manager [*Id.* pp. 7, 18, 41]. Even after Ms. Herron offered that plaintiff could remain in his grocery manager position, plaintiff again

11

requested a transfer to Store #670, this time specifically to the lead dairy clerk position [*Id.* p. 16; Doc. 14-2 p. 64]. Although plaintiff was aware the dairy lead position would require a change in job duties and a decrease in compensation, the store was close to plaintiff's home and was managed by someone with whom plaintiff had previously had a positive working relationship [Doc. 21-1 pp. 15, 20; Doc. 14-1 p. 4]. Under these circumstances, no reasonable jury could conclude that the conditions of plaintiff's transfer—which occurred based on plaintiff's voluntary decision to move to the dairy lead position—were objectively intolerable.[3] *See Malone v. City of Ontario*, No. 1:15-CV-2456, 2016 WL 6563679, at * 8 (N.D. Ohio Nov. 4, 2016) ("[A] voluntary transfer is only an adverse employment action where the transfer occurs under conditions that would have been 'objectively intolerable to a reasonable person.'") (quoting *Deleon*, 739 F.3d at 921).

Because plaintiff cannot establish that he suffered an adverse employment action, plaintiff has failed to make out a *prima facie* case for employment discrimination under the ADA. Accordingly, summary judgment will be granted in defendant's favor on this claim.

---

[3] Although "constructive demotion" claims have been rare in this circuit, cases from other circuits also support this Court's finding that the circumstances surrounding plaintiff's request to transfer were not objectively intolerable and, thus, that plaintiff's request was voluntary. *See Sharp v. City of Houston*, 164 F.3d 923, 934 (5th Cir. 1999) (jury entitled to find plaintiff's request to transfer was not voluntary where mistreatment and retaliatory acts of colleagues were so intolerable that a reasonable person would have felt compelled to leave); *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876–77 (7th Cir. 1999) (affirming summary judgment for defendant where plaintiff's complaints about conditions such as lack of support and failure to discharge threatening employee were insufficient to amount to constructive demotion); *Tressler v. Nat'l R.R. Passenger Corp.*, No. 09-CV-2027, 2012 WL 5990035, at * 12 (D.D.C. Nov. 30, 2012) ("While the Court recognizes that [plaintiff's] experience with [her manager] may have certainly been uncomfortable, her assertions cannot be reasonably construed as sufficiently 'severe' to leave a reasonable employee with no other option than to 'demote' herself to another position.").

## C. Retaliation Under the ADA

Defendant argues that plaintiff failed to administratively exhaust his remedies in regard to his retaliation claim because he did not allege retaliation in his EEOC charge. "[A] claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citations omitted). EEOC charges are "construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations of the EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (citation omitted); *see also Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (explaining that a liberal construction of an EEOC charge may be appropriate even if the charge was prepared by an attorney rather than a *pro se* complainant). Accordingly, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Younis*, 610 F.3d at 362 (alteration in original) (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)) (internal quotation marks omitted).

Under Sixth Circuit law generally, "retaliation does not reasonably grow out of a substantive claim of discrimination if the retaliation occurred before the EEOC charge was filed." *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 110 (6th Cir. 2009). "However, where the charge of discrimination clearly alleges facts that would give rise to a retaliation claim, that retaliation claim is exhausted even though the retaliation occurred before the charge was filed." *Id.* The Sixth Circuit has found that a plaintiff has not

13

exhausted administrative remedies where he: (1) "failed to check the box in his EEOC form entitled 'retaliation;'" and (2) "the narrative section [did not] include facts that would suggest he intended to bring an ADA retaliation claim." *Deister v. Auto. Club Ins. Ass'n.*, 647 F. App'x 652, 658 (6th Cir. 2016). *See also Younis*, 610 F.3d at 363.

Here, it is undisputed that plaintiff did not check the retaliation box on his charge and that he did not amend the charge to add a retaliation claim. The Court, therefore, turns to the text of the charge to determine whether plaintiff "include[d] facts that would suggest that he intended to bring an ADA retaliation claim." *Deister*, 647 F. App'x at 658.

In his filings in this Court, plaintiff alleges retaliation based on his protected activity of requesting a reasonable accommodation. Specifically, he states that he asked to continue his reasonable accommodation of handwriting schedules and having other employees input them into the computer, and for that he was "constructively demoted" and subjected to harassment at his new store. However, his charge makes no mention at all of his request for a reasonable accommodation [Doc. 21-4 p. 2]. Instead, it states that when Mary Keeler confronted him about entering schedules into the computer and responding to messages from other employees, plaintiff responded that those tasks were difficult due to his health condition [*Id.*]. Thereafter, plaintiff states that "Mary Keeler told me if I could not do these tasks I needed to step down. Fearing I would be terminated, I accepted a demotion from Head Grocery Clerk to Lead Dairy Clerk at a different store location" [*Id.*]. Plaintiff then stated that the "demotion resulted in a reduction in pay and duties," and that, following his

transfer, he "continued to be harassed," was "overworked," was "not provided proper staffing levels," and was "written up" for alleged mistakes of other employees [*Id.*].

Notably, plaintiff never mentions or implies that he was demoted or subjected to harassment because he requested a reasonable accommodation. *See Dixon v. Ashcroft*, 392 F.3d 212, 217–18 (6th Cir. 2004) (finding that the plaintiff put the EEOC on notice of the alleged retaliation by stating in his charge that he was discriminated against because of the protected activity). In addition, plaintiff does not describe any characteristics in the meeting that lend support to the claim that he was terminated for a protected activity. *See Spengler*, 615 F.3d at 490 (finding that the plaintiff put the EEOC on notice of the alleged retaliation because the plaintiff described that the individual who made the termination decision was visibly upset when the plaintiff engaged in protected activity).

Instead, the only indication plaintiff makes in his charge that could give rise to a retaliation claim is that his "demotion and continued harassment [are] based on my age and disability" [*Id.*]. However, this allegation does not rise to the level of "clearly alleg[ing] facts that would give rise to a retaliation claim," and plaintiff does not suggest that he intended to bring a retaliation claim. *Johnson*, 344 F. App'x at 110; *see also Deister*, 647 F. App'x at 658. Consequentially, plaintiff failed to administratively exhaust his remedies in regard to his retaliation claim. The Court will, therefore, grant summary judgment in defendant's favor on plaintiff's retaliation claim.

### D. Disability Discrimination Under the TDA[4]

Finally, defendant argues that plaintiff's disability discrimination claim under the TDA is barred by a one-year statute of limitations, because plaintiff's transfer to Store #670 was effective August 7, 2016, and plaintiff did not file his complaint in this Court until September 18, 2017 [Doc. 13 p. 16]. Defendant cites Tenn. Code Ann. §§ 4-21-311(d) and 8-50-103(c)(2), which together provide that a civil action alleging a violation under the TDA must be filed "within one (1) year after the alleged discriminatory practice ceases." Plaintiff did not respond to or contest defendant's assertion that plaintiff's claim is time-barred.

As discussed at length above, plaintiff's discrimination claim is based solely on a theory of "constructive demotion." Although the parties appear to disagree about precisely when the meeting between plaintiff and Ms. Keeler took place, it is clear it was some time in early- to mid-July of 2016, after which plaintiff submitted his first letter requesting a transfer to Store #670 [Docs. 21-1 p. 10; 14-1 pp. 1, 4]. After meeting with Ms. Herron,

---

[4] As mentioned above, the Court does not read the complaint as alleging a failure-to-accommodate or a retaliation claim under the TDA. However, to the extent the complaint does allege these claims, summary judgment is granted for defendant on both. Any failure-to-accommodate claim fails because the TDA "do[es] not include a 'reasonable accommodation' component," so "courts will not find that an employer discriminated against its employee if the employee's disability prevented or impaired him or her from performing the job's duties." *Oliver v. Titlemax*, 149 F.Supp.3d 857, 865–66 (E.D. Tenn. 2016) (citations omitted). Here, plaintiff acknowledges that his tremors impaired his ability to use a mouse and keyboard, leaving him unable to perform some duties associated with his job. Any retaliation claim similarly fails, because plaintiff alleges that defendant retaliated against him for engaging in the protected activity of requesting a reasonable accommodation. *See Equal Employment Opportunity Commission v. Dolgencorp*, 196 F. Supp. 3d 783, 800 (E.D. Tenn. 2016) ("[C]ourts have declined to find that a retaliation claim under the TDA has merit if the alleged reason for retaliation is that the plaintiff requested accommodation.") (citations omitted).

plaintiff submitted a second transfer request on July 21, 2016 [Doc. 14-2 p. 64]. That request was approved by Kroger and became effective on August 7, 2016 [*Id.* p. 3]. Plaintiff filed his charge of discrimination with the EEOC on January 21, 2017 [Doc. 21-4], and filed the complaint in this action on September 18, 2017 [Doc. 1].

It is well-settled that the one-year limitations period for bringing an action under section 4-21-311—and, by extension, under 8-50-103—"is not tolled while administrative charges are pending with the [Tennessee Human Rights Commission] or the EEOC." *See Conner v. City of Jackson*, 669 F. Supp. 2d 886, 890 (W.D. Tenn. 2009) (citing *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485–86 (6th Cir. 1989) (additional citations omitted). Therefore, the fact that plaintiff filed his EEOC charge in January, 2017, is inapposite here. Furthermore, although Tennessee law recognizes a "continuing violation doctrine" that would allow plaintiff "to challenge an ongoing, continuous series of discriminatory acts in their entirety so long as one of those discriminatory acts falls within the limitations period," plaintiff does not argue, and the Court does not find, that this doctrine is applicable in this case, where plaintiff's discrimination claim is essentially restricted to one act by one manager. *See Reed v. Cracker Barrel Old Country Store, Inc.,* 133 F. Supp. 2d 1055, 1074 (M.D. Tenn. 2000); *see also Walker v. Town of Greeneville*, 347 F. Supp. 2d 566, 569 (E.D. Tenn. 2004). As such, given that plaintiff filed his complaint more than one year after the alleged discriminatory act, the Court must conclude that plaintiff's discrimination claim under the TDA is barred by the statute of limitations. Accordingly, summary judgment is granted for defendant on this claim.

## IV. Conclusion

For the reasons explained above, defendant's motion for summary judgment [Doc. 12] will be **GRANTED**.  A separate order will follow.  The Clerk will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE